IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN MAUS,

                Plaintiff,

v.
                                                                           OPINION and ORDER

GARY BOUGHTON, KOOL, ROBERT FISCHER,
SERGEANT MATTI, COMPLAINT EXAMINER RAY,        22-cv-141-jdp
MATT HEESAKER, LIBRARIAN BROADBENT,
and ANDREA OLMANSON,

                Defendants.

---

Plaintiff Brian Maus, appearing pro se, is an inmate at Kettle Moraine Correctional Institution. Maus contends that when he was confined at Wisconsin Secure Program Facility, prison officials punished him for using the library's scrap paper to prepare a brief for use in a federal lawsuit. He has paid the full filing fee for this case.

Because Maus is a prisoner suing government officials, the next step is for me to screen Maus's complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A(a). In doing so, I must accept his allegations as true, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Maus's current allegations do not state a claim for relief. I will give him a chance to submit an amended complaint to further explain his claims.

ALLEGATIONS OF FACT

Maus is a state of Wisconsin inmate who was formally incarcerated at Wisconsin Secure Program Facility. Maus's complaint concerns events that occurred as Maus attempted to litigate a case that he had brought in the United States District Court for the Eastern District of Wisconsin, *Maus v. Lade*, No. 17-cv-65 (E.D. Wis), chiefly about him being sexually assaulted by staff during improper pat-down searches.

In March and April 2019, Maus drafted a brief opposing defendants' motion for summary judgment. Maus believed that he was allowed to write his brief on the back sides of old DOC forms that were placed in the law library for use as scrap paper. In late April he gave his summary judgment opposition materials to defendant librarian Broadbent. Broadbent confiscated Maus's brief rather then send it to the court, on the ground that Maus had misused the library's scrap paper. Broadbent did send the court Maus's evidentiary materials, which were not prepared on those forms. Broadbent directed an officer to remove the DOC-form scrap paper from the prison library. But those forms were later returned to the library and I take Maus to be saying that inmates were allowed to use them for legal work, including drafting briefs, before and after the incident here.

Broadbent and defendant Kool told Maus that they would issue a conduct report against Maus for misusing state property. Defendant Heesaker offered Maus five days of cell confinement and $11.70 in restitution to resolve the conduct report, which Maus refused. Later defendant Matti told Maus that defendant Fischer offered him five days of cell confinement on the conduct report, which Maus again refused. Fischer, who I take Maus to be saying was the hearing examiner in his conduct report hearing, found Maus guilty and ordered eight days of cell confinement and $11.70 in restitution. Maus wasn't able to use the law library during

his cell confinement. Defendant Boughton later revoked the eight days of cell confinement, but Maus had already served that time.

Maus later filed a motion for preliminary injunction in his federal case to stop defendants from blocking his access to the court. The judge in that case denied the motion for preliminary injunction but gave Maus an extension of time to file his summary judgment opposition brief. My own review of the electronic docket of the Eastern District case shows that Maus submitted an opposition brief after receiving the extension. *See* Dkt. 57 in the Eastern District case. The court granted summary judgment to defendants on most of Maus's claims but denied summary judgment for one of his Eighth Amendment sexual assault claims. *See* Dkt. 67 in the Eastern District case. The jury found for the sole remaining defendant at trial.

ANALYSIS

Maus contends that defendants "criminally and civilly conspired" with each other to violate his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as various civil and criminal statutes. Maus's conclusory allegations that defendants conspired with each other to harm him aren't sufficient to bring claims against all of the defendants together for the particular actions of any single defendant. *See Cooney v. Rossiter*, 583 F.3d 967, 970–71 (7th Cir. 2009). I will focus on the specific actions of each defendant and consider whether they were personally involved in violating Maus's rights. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (constitutional claims under 42 U.S.C. § 1983 must be based on a defendant's personal involvement in the violation). I also won't consider Maus's allegations that defendants' actions violated various criminal statutes

3

because those provisions do not create private causes of action for a civil lawsuit, and this court cannot initiate criminal proceedings. Maus does not explain his legal claims in great detail but it is unnecessary for him to do so because pro se plaintiffs are generally not required to plead legal theories. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). I will consider what claims his factual allegations might support.

Because Maus says that some of the defendants "blocked Maus's court doors" by failing to send his summary judgment opposition brief to the court and by blocking him from using the law library during his cell confinement, I construe his complaint as raising access-to-the-courts claims. The Constitution guarantees prisoners the right to have "meaningful access to the courts." *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 823 (1977)). But generally, an inmate may bring an access-to-the-courts claim only if he was actually injured, meaning that he was prevented from filing or litigating his own nonfrivolous claim. *Christopher v. Harbury*, 536 U.S. 403, 414 (2002); *Lewis v. Casey*, 518 U.S. 343, 346–348 (1996). Maus's allegations do not support an access-to-the-courts claim because he does not explain how he was injured. Despite Broadbent confiscating his original summary judgment opposition brief and his stint in cell confinement, the court gave Maus an extension of time to file a replacement brief, which he filed and which was considered by the court. He does not suggest that his failure to prevail on any of his claims in that case was caused by the confiscation of his original brief or his inability to use the law library for a week.

Maus also conclusorily states that defendants took the actions they did to retaliate against him. To establish a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the

4

First Amendment activity was at least a "motivating factor" in defendants' decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). None of Maus's current allegations meet these standards.

Maus doesn't actually explain why he thinks defendants retaliated against him. If what he means is that defendants retaliated against him by punishing him for using the DOC-form scrap paper for his summary judgment opposition brief, the use of a particular type of paper isn't an activity protected by the First Amendment. If what Maus means is that defendants punished him for litigating his Eastern District case, participating in a lawsuit can be a protected First Amendment activity. But defendants' alleged retaliatory actions (confiscation of his original brief and punishment of eight days of cell confinement and about $12 in restitution) seem unlikely to deter a person of ordinary firmness from continuing with the protected activity. Those actions certainly did not deter Maus, who drafted a replacement brief and continued to litigate his case through to trial. I will not allow him to proceed on retaliation claims.

I take Maus to be contending that he should not have been disciplined for misuse of state property because before and after the incident, inmates were allowed to use the DOC-form scrap paper for drafting legal submissions. In certain circumstances, problems in inmate disciplinary proceedings could state a claim for relief under the Due Process Clause of the Fourteenth Amendment. *See e.g.*, *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012) (prisoners are "entitled to informal, nonadversarial due process" when challenging the procedures placing them in segregation); *Tonn v. Dittmann*, 607 F. App'x 589, 590 (7th Cir. 2015) ("Due process requires that before prison officials deprive a prisoner of a protected interest, they produce 'some evidence' of conduct that authorizes the deprivation.").

But Maus's current allegations regarding his conduct report do not support due process claims. For instance, Maus contends that defendants gave him a false conduct report, but an improperly motivated or even false conduct report does not alone amount to a denial of due process. *See Lagerstrom v. Kingston*, 463 F.3d 621, 624–25 (7th Cir. 2006) (false conduct reports do not create procedural due process claim because inmate has ability to litigate truthfulness of report through hearing process). And inmates do not have a protected interest in avoiding short-term placement in segregated settings, so his eight days of cell confinement are not enough to support a claim. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (short-term placements in segregation do "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," triggering the protections of the Due Process Clause). If what Maus means is that defendant Fischer incorrectly convicted him of misuse of state property, due process does not demand that the hearing examiner comes to the *correct* decision, so this court cannot review the merits of the conviction. *See, e.g.*, *Turner v. Boughton*, No. 17-cv-203-jdp, 2021 WL 1200597, at *11 (W.D. Wis. Mar. 30, 2021) (citing *State ex rel. Curtis v. Litscher*, 2002 WI App 172, ¶ 12, 256 Wis. 2d 787, 650 N.W.2d 43 ("Certiorari is the well-established mode of judicial review for inmates . . . who seek to challenge prison disciplinary decisions.")).

As currently constructed, Maus's complaint does not plausibly state any claim for relief. But because Maus appears pro se, I will give him a chance to amend his complaint. *See Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016) ("[W]hen a plaintiff—especially a pro se plaintiff—fails to state a claim in his first complaint, he should ordinarily be given a chance to amend."). If Maus believes that he can state a federal claim related to these events, he should draft new allegations as if he were telling a story to people who know nothing about the events

at issue. In particular, he should explain (1) what each individual defendant did to violate his rights; and (2) how he knows that defendants meant to conspire or retaliate against him. If Maus fails to respond to this order by the deadline below, I will dismiss the case for his failure to state a claim upon which relief may be granted, and the court will record a strike against him under 28 U.S.C. § 1915(g).

ORDER

IT IS ORDERED that:

1. Plaintiff Brian Maus's complaint, Dkt. 1, is DISMISSED.

2. Plaintiff may have until May 17, 2022, to submit an amended complaint addressing the problems described in the opinion above.

Entered April 29, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge